(No. 42572.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
JAMES FOX, Appellant.

*Opinion filed March 16, 1971.—Rehearing denied May 26, 1971.*

240

GERALD W. GETTY, Public Defender, of Chicago, (EL-LIOT M. SAMUELS and JAMES J. DOHERTY, Assistant Public Defenders, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and ARTHUR L. BELKIND, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE RYAN delivered the opinion of the court:

A jury of the circuit court of Cook County found the defendant, James Fox, guilty of murder and he was sentenced to the Illinois State Penitentiary for a term of not less than 25 nor more than 40 years. He has appealed directly to this court, a constitutional question being involved. Supreme Court Rule 603, 43 Ill.2d R. 603.

On January 1, 1968, at about 5 P.M. Harry Bailey and his wife, Gladys, were in the living room of their apartment at 4451 North Mauldin in Chicago. Their station wagon was parked on the street in front of their apartment. There was not room for another car to park behind their station wagon without blocking the crosswalk. As Mr. Bailey was looking out his front window he observed a car pull up behind his and push it forward. He called his wife and they watched a man get out of the car and walk away. Mr. Bailey went out while Mrs. Bailey continued to watch from the window. She saw the man return with a woman. The woman got in the car and the man started talking to Mr. Bailey. Mrs. Bailey then joined her husband on the street. An argument developed over the fact that this man had pushed the Bailey car and the bumpers had become locked. There are different estimates as to how long the argument lasted. It appears to have lasted at least 30 minutes and at times was quite heated. It was described by one witness as being "face to face". Finally it apeared that the argument had run its course. Mr. and Mrs. Bailey started toward their house and the other man got into his automobile. As he did so he called Mr. Bailey a foul name. Mr. Bailey then returned to the car and when he was two or three feet from it the man shot him three times. Mrs. Bailey was about four feet from the man when this happened. The man immediately drove away. Mr. Bailey died the next day.

Melvin Poisso and his wife, Gladys, were walking to her brother's apartment that evening. As they passed the intersection they noticed three people arguing. Mrs. Poisso's brother was not home so they returned. At the intersection they noticed that the argument was still in progress so they remained and watched. Mr. Poisso stated that they were there almost 30 minutes. They were standing about fifteen or twenty feet away from the three participants and they witnessed the shooting. After he was shot Mr. Bailey told Mr. Poisso to call the police and to get the license number

of the car. Although Mr. Poisso gave chase he was unable to secure the license number.

The lighting at the scene was described as good. There was a street light in front of the Bailey vehicle and one at the intersection behind the other car. There was snow on the ground. Mrs. Bailey and Mr. and Mrs. Poisso were able to give detailed descriptions of the car. It was described as a 1955 blue Chevrolet. On the driver's side there were two broken windows and the front bumper was bent. There was no chrome on the side of the car. Mrs. Bailey observed that there was primer paint around the headlights. Both Mrs. Bailey and Mrs. Poisso observed that the man was wearing a red sweatshirt with a hood and he was wearing a jacket over the sweatshirt. Mrs. Bailey observed that the woman who was with the man looked very young, around 19 or 20 and had long, brown hair. Mrs. Poisso stated that during the argument she was able to see all three participants and was able to get a clear view of the man's face.

On January 12, 1968, the police located a car that fit the description that had been given them of the one involved. The car was parked behind a building in which the defendant, James Fox, resided with his wife. The police took Mrs. Bailey and Mr. and Mrs. Poisso to view the car and they identified it as being the one involved in the incident on January 1. The police then went to the Fox apartment. Mr. Fox was not home but the police spoke to Mrs. Fox. At the request of the police she stepped to the rear porch of her apartment where Mrs. Bailey could see her. Mrs. Bailey said that Mrs. Fox was not the woman who had been in the car with the man who shot her husband. The three witnesses were then taken to the police station. Mrs. Bailey was not in the same car with Mr. and Mrs. Poisso. Mrs. Fox was also taken to the station.

After arriving at the station, at the request of a police officer, Mrs. Fox gave him two pictures of her husband

which she had in her billfold. One picture showed her husband with her and the other showed her husband with another man. The officer then exhibited the pictures to the three witnesses. The evidence indicates that the witnesses were separated when the pictures were shown to them. It also appears that a different grouping of the pictures was used for each witness. Some of the witnesses were shown a picture of two men neither of whom was James Fox. All of them were shown at least one picture which showed the defendant. All three of the witnesses identified the defendant from these pictures as the man who shot Mr. Bailey. They remained at the police station while some police officers were dispatched to the Fox apartment. When the defendant returned from work the police officers were waiting for him and he was taken to the station and seated at a table in a large room in the Auto Theft Division. A plainclothes detective was seated at the table with him. There were 15 to 20 other people in the room. All, with the possible exception of one, were dressed in street clothes. Some were employees of the police department and some were people who had come to the station concerning the thefts of their automobiles.

After the defendant was seated the three witnesses were asked to step into the room one at a time to see if anyone was in the room whom they could identify. There is a conflict in the evidence as to the sequence in which the witnesses entered the room but it appears that each identified the defendant as the man who had shot Mr. Bailey. It also appears that there was no communication between a witness after he had identified the defendant and the other witnesses until after all three had identified the defendant. The defendant was then formally placed under arrest. Until that time the defendant had not been informed of his right to counsel nor did he have counsel representing him.

Prior to trial the defendant filed a pleading called a petition to suppress evidence which alleges that he was arrested on January 12, 1968, and taken to a police station

where he was confronted by the three witnesses who identified him as the man who committed the offense; that this confrontation was a critical stage in the proceedings against him and he was entitled to representation by counsel and that at said confrontation he was not represented by counsel nor was he informed of his right to have counsel and, if indigent, of his right to have counsel appointed for him. The petition alleges that because of the denial of his right to counsel during the confrontation when the witnesses identified him as the man who committed the crime, any testimony by the witnesses identifying the defendant in any way as the man who committed the crime charged should be suppressed. The petition further alleges that the procedures followed were suggestive and conducive to mistaken identification, thereby denying the defendant due process of law. The petition then prays that the testimony of the witnesses concerning the identification of the defendant as the person who committed the crime charged be suppressed. Following a hearing, the court denied the relief prayed in the petition and the case proceeded to trial before a jury.

At the trial of the case each of the three witnesses made an in-court identification of the defendant as the person who shot Mr. Bailey. Each of the three witnesses also testified as to the proceedings at the police station on January 12, 1968, and told how they had identified the defendant from photographs and also had identified him personally in the room at the station. At the trial, the defendant made no objection, either to the in-court identification of the defendant, or to the testimony concerning the extrajudicial identification of the defendant at the police station.

The defendant claims the confrontation proceedings at the police station were constitutionally deficient for two reasons. First, he was denied his right to counsel at a critical stage of the proceedings in violation of the sixth amendment of the Federal constitution. Second, he was denied due process of law in violation of the fourteenth amendment of

the Federal constitution, because the procedure of permitting the witnesses to view photographs of the defendant and then permitting them to view him personally while seated at a table was unnecessarily suggestive and conducive to mistaken identification.

Concerning his contention that he was denied his constitutional right to counsel at a critical stage, the defendant urges this court to reconsider its holding in *People v. Palmer*, 41 Ill.2d 571. Under the rule announced in *Palmer*, the defendant recognizes that he would not be entitled to counsel because in *Palmer* this court held that the constitutional right to counsel at a pretrial confrontation as defined in *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, and *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, applies only to post-indictment confrontations and not to confrontations which occur prior to the time that the defendant is formally charged with an offense. Because of the view which we take of this case it is unnecessary for us to consider the same in the light of *Palmer*.

The evidentiary question involved in identification testimony is two-fold: (1) in-court identification of the defendant and (2) testimony given in court concerning extrajudicial identification of the defendant by the witnesses—in this case the identification of the defendant by the witnesses from pictures and from personal viewing at the police station. In the first situation, if the identification is based on a source independent of and untainted by the identification at the pretrial confrontation, the same is admissible even if the pretrial confrontation was conducted in violation of the defendant's right to counsel under the sixth amendment. (*United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149 at 1166; *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178 at 1186.) Also, if the confrontation is conducted in a suggestive manner conducive to mistaken identification, the

question of whether the defendant was denied due process of law in violation of his rights under the fourteenth amendment depends on the totality of the circumstances. If the witness had an adequate opportunity to observe, and there is little likelihood that the procedures used led to a mistaken identification, the conviction based on a subsequent in-court identification will not be set aside. *Simmons* v. *United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967; *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *People* v. *Speck,* 41 Ill.2d 177; *People* v. *Nelson,* 40 Ill.2d 146.

In our case the record indicates that the three witnesses had adequate opportunity to observe the defendant during the course of the argument on the evening of January 1, 1968. The light was good. Mrs. Bailey was in close proximity to the defendant during most of the 30 minutes or more that the argument lasted. Mr. and Mrs. Poisso were within 15 or 20 feet of the defendant during the time that they watched the argument. The light was bright enough to enable all three witnesses to give a detailed description of the car including its color and the fact that it had a bent bumper and broken windows. The light also enabled Mrs. Bailey and Mrs. Poisso to see that the defendant was wearing a red sweatshirt with a hood and had a jacket on over it. Under these circumstances, we think the record discloses that the in-court identification of the defendant by the three witnesses had a source independent of and untainted by any viewing of the pictures of the defendant and the defendant himself at the police station on January 12, 1968. Thus there is nothing about the in-court identification which requires us to consider defendant's rights under the sixth amendment or the application of the rule of *Wade* and *Gilbert.* Furthermore, the totality of the circumstances here do not indicate that the identification procedures followed at the police station led to a misidentification of James Fox at the trial.

Hence, there was no violation of defendant's rights under the fourteenth amendment.

The second situation concerning in-court testimony of extra-judicial identification presents a different question. If the confrontation was conducted in violation of the defendant's rights under the sixth amendment such testimony is inadmissible and the question of independent source is not involved. "That testimony is the direct result of the illegal lineup 'come at by exploitation of [the primary] illegality'." *Gilbert* v. *California*, 388 U.S. 263, 18 L. Ed. 2d 1178 at 1186, 87 S. Ct. 1951.

The defendant has not indicated in his petition to suppress which facet of the identification testimony he is objecting to. The evidence presented at the hearing on the petition shows only the circumstances surrounding the extra-judicial identification, the taking of the defendant into custody and the fact that he did not have an attorney. The court was not informed at any time during the hearing, or the argument of counsel following the same, that these witnesses would give testimony at the trial concerning the extra-judicial identification. Indeed, the argument of counsel indicates that the court was only being asked to pass on the propriety of in-court identifications. The court refused to suppress the identification evidence. It was not requested by the defendant to rule on the admissibility of testimony concerning the extra-judicial identification. The defendant made no objection to this testimony at the trial. It was not until the motion for a new trial that the defendant finally specified this testimony by alleging that the court erred in failing to suppress testimony relating to identifications "made at a showup where he was not represented by counsel".

Situations exist in which testimony involving in-court identification is proper whereas testimony concerning extra-judicial identification is inadmissible. The denial of the mo-

tion to suppress in-court identification did not therefore signify the denial of a motion to suppress testimony concerning out-of-court identification. We therefore hold that the defendant by his failure to raise the question at the hearing on the petition to suppress, and by his failure to object to the testimony at the trial, has not preserved the question of the admissibility of testimony concerning the extra-judicial identification for review. *People* v. *Adams,* 41 Ill.2d 98; *People* v. *Harris,* 33 Ill.2d 389; *People* v. *Sotos,* 26 Ill.2d 460; *People* v. *King,* 26 Ill.2d 586.

Similarly, the defendant has not referred to the testimony concerning his out-of-court identification in his brief filed in this court but he does request therein that this court remand the case for a determination of whether the in-court identification of the defendant has an origin independent of the improper pretrial procedure followed. This is relief not applicable to a situation where testimony has been wrongfully admitted concerning an extra-judicial identification made in violation of defendant's rights under the sixth amendment. *Gilbert* v. *California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 1186, 87 S. Ct. 1951.

In summary, our holding with regard to the pretrial confrontation is this: The procedure followed did not violate the defendant's constitutional right of due process of law under the fourteenth amendment because the record indicates that the witnesses each had an adequate opportunity to observe the defendant at the scene of the crime and there is little likelihood that the procedure followed at the pretrial confrontation led to any misidentification of the defendant. Concerning the defendant's right to counsel as provided by the sixth amendment, we find it unnecessary to consider whether he was entitled to counsel at this stage for two reasons. First, as to the in-court identification, the record discloses that the same had an independent source other than and untainted by the confrontation on January 12, 1968. Second, as to the in-court testimony

concerning the extra-judicial identification, the defendant did not preserve a question relating thereto for review, nor did he raise the issue in this court.

The court refused to give defendant's instruction No. 3 on the subject of identification. The defendant complains that since his theory of defense was erroneous identification he had a right to have his instruction on identification given. IPI-Criminal section 3.15 recommends that no instruction be given on this subject stating that the subject is adequately covered by instruction No. 1.02 on credibility of witnesses. Instruction No. 1.02 was given as State's instruction No. 2. The court also gave IPI-Criminal instruction No. 2.03 as State's instruction No. 4. This instruction covers the presumption of innocence and the burden of proof on the State to prove the defendant guilty beyond a reasonable doubt. We think these two instructions adequately cover the subject matter of defendant's instruction No. 3 in a clearer and more concise and accurate manner than defendant's instruction. We are not informed whether the language of defendant's instruction No. 3 has ever been judicially approved. We do note however, that its language violates the spirit of the last sentence of our Rule 451(a) (43 Ill.2d R. 451(a)) which provides: "Whenever IPI-Criminal does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial, and free from argument."

We conclude that this instruction is not simple, brief, impartial and free from argument. It contains many of the evils IPI-Criminal seeks to avoid. If a party wishes to have the jury instructed on a subject that is not covered by IPI-Criminal he must tender an instruction to the court that does not violate the spirit of Rule 451(a).

The defendant objects to the extent of the State's cross-examination of the defendant. The tenor of the objected-to cross-examination indicates that the defendant

and his wife had not been living together for almost a year before the trial and that they had been having marital problems before January 1, 1968. The defendant's alibi was that on the day of the shooting he had been at home with his wife all day. The three witnesses had testified that at the time of the shooting the defendant had another woman with him. In view of the alibi and this evidence we do not think that the trial court abused its discretion by permitting this cross-examination. We further note that after the objections had been overruled and the witness had answered, the defendant announced to the court that he was withdrawing his objection.

During the cross-examination of the defense witness Thacker, who on direct examination had identified the auto which she had seen leave the scene of the shooting as a Dodge or a Plymouth and not a 1955 Chevrolet, the witness was asked if she hadn't told an assistant State's Attorney on the phone that it was a 1955 Plymouth. The assistant State's Attorney was not called in rebuttal. The defendant claims it was error for the State not to call the assistant State's Attorney to testify concerning the phone conversation he had with this defense witness. Before the defendant rested, he moved to strike the questions to the witness Thacker concerning the telephone conversation. Following the rebuttal testimony of a police officer, the defendant withdraw his motion to strike the questions and answers concerning the telephone conversation. After both sides had rested and the conference on instructions had been held, again the defendant made a motion to strike that portion of the interrogation of the witness Thacker. The court refused to reopen the case to entertain the motion. We consider it to be discretionary with the court whether or not the case should have been reopened. We do not consider that the court's refusal to permit the reopening of the case in this instance constituted an abuse of that discretion.

Defendant's next position is that if he were guilty of

any crime it should be the crime of voluntary manslaughter and not murder. It is his position that the deceased was shot while he was moving menacingly toward the other man and that the shooting was the result of a sudden and intense passion resulting from serious provocation. Defendant contends that the long and heated argument constituted the serious provocation. The defendant's theory of the case in the trial court was that of "nonguilt" based on an alibi and the jury was instructed on that theory. The question of voluntary manslaughter was never raised in the trial court. The defendant did not tender an instruction on voluntary manslaughter and the jury was not instructed on that subject. (See *People* v. *Orr*, 24 Ill.2d 100.) The defendant did not see fit to raise this question in his motion for a new trial. For these reasons we will not consider this question at this time. The court instructed the jury as to what the State had to prove to sustain the charge of murder and that each of these propositions had to be proved beyond a reasonable doubt. This court stated in *People* v. *Crews*, 38 Ill.2d 331, that a reviewing court will disturb a finding of guilty only where the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. Under this test and the evidence in this case we cannot disturb the finding of the jury.

Finally, the defendant contends that the sentence of 25 to 40 years is excessive. This court has consistently held that where it is claimed that the punishment imposed is excessive, although within the limitations prescribed by the legislature, that sentence should not be disturbed unless it is greatly at variance with the purpose and spirit of the law or manifestly in excess of the proscriptions of section 11 of article II of the Illinois constitution which requires that all penalties should be proportioned to the nature of the offense. The trial court is normally in a superior position during the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be

imposed than are courts of review. (*People* v. *Hampton,* 44 Ill.2d 41; *People* v. *Taylor,* 33 Ill.2d 417.) Under the above guidelines, we cannot say, after reviewing the record, that the court's sentence was improper.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*