(No. 43516.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RONALD J. BURBANK, Appellant.

*Opinion filed November 30, 1972.*

GOLDENHERSH and SCHAEFER, JJ., dissenting.

GERALD W. GETTY, Public Defender, of Chicago (JOHN T. MORAN, JR., and JAMES J. DOHERTY, Assistant Public Defenders, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and STEPHEN J. CONNOLLY, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

Ronald Burbank was convicted of murder after a jury trial in the circuit court of Cook County. He was sentenced to a term of from 100 to 150 years and has appealed directly to this court.

At about 4:30 P.M. on July 30, 1968, three girls from 13 to 15 years of age were walking on Ashland Avenue in Chicago. They saw defendant walk across the street, pass them and enter a shoe repair store. They stated that their attention was attracted to him because he was "cute" and "good-looking." They loitered in front of the store for awhile waiting for him to come out. They heard shots following which the defendant hurriedly emerged from the store. Two of the girls stated that they saw him put a gun in his pants or under his belt, and as he was fleeing he bumped one of the girls.

On investigating, the police learned that the proprietor of the shoe repair store had been killed. A policeman took a description of the defendant from the girls. The next morning at about 10:30 defendant was arrested at his mother's home and put in the squad car. He was 20 years old. The officers testified that the defendant was advised of his rights and that he stated that at the time of the murder he had been in a nearby pharmacy having a prescription filled. He was then taken to the police station. On checking at the pharmacy, it was learned that his story was false. The defendant was again advised of his rights at the station, following which he made an oral statement to the effect that he and Romell Wilson had agreed to rob the shoe repair store. Wilson went in first and the defendant came in later. Both were armed. When Wilson announced the robbery the proprietor started throwing shoes and Wilson shot him. When Wilson was arrested and brought to the police station he too made an oral statement to the police. Defendant and Wilson were placed in a lineup with three other Negro boys and the defendant was identified by the three girls.

The defendant and Wilson were indicted together for murder. Defendant filed a motion to suppress his oral statement. Following an evidentiary hearing the court denied the motion. The defendant also filed a motion to

suppress the identification testimony, which motion was denied following a hearing. The defendant moved for a severance, which was denied, and defendant and Wilson were tried together. Neither testified. However, the officers testified as to the oral statements that both had made.

Defendant first contends that he did not waive his constitutional rights before the interrogation which led to his oral statement. He also contends that the oral statement was a result of coercion. At the hearing to suppress the oral statement, two police officers and the defendant testified as to the circumstances of the giving of the statement.

The defendant contends that the record does not disclose that he knowingly waived his constitutional rights. In support of his contention he calls to our attention the language of the Supreme Court in *Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602,* that "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." 384 U.S. at 475.

Both officers stated that when advised of his rights in the squad car after his arrest the defendant said that he understood his rights. One of the officers testified that he further stated that he had nothing to hide. The officers stated he was again advised of his rights at the police station and again the evidence is that he stated he understood. He then told the officers of his involvement in the crime. The officers testified that he did not ask for an attorney nor did he ask to be permitted to call one. After the defendant had given the oral statement, he was asked if he would give a written one and he refused to do so.

The defendant testified that he was never advised of his constitutional rights. He stated that he had asked if he could call a lawyer but was not permitted to do so until after the questioning. He also denied making oral admis-

sions. The defendant also argues that his refusal to give a written statement indicates he did not intend to waive his constitutional rights.

The preliminary inquiry as to whether the defendant has been properly warned and whether he knowingly waived his rights is for the trial court. In making its determination the court need not be convinced beyond a reasonable doubt and its findings will not be disturbed unless it can be said that they are against the manifest weight of the evidence. *Lego v. Twomey, 404 U.S. 477, 30 L.Ed.2d 618, 92 S.Ct. 619; People v. Dailey, 51 Ill.2d 239; People v. Higgins, 50 Ill.2d 221.*

On both occasions when advised of his rights defendant acknowledged that he understood them, and he subsequently discussed the case with the officers. There was also evidence that after having been given his warning in the squad car he stated that he had nothing to hide. All of this supports the trial court's determination. Once an accused has been advised of his rights and indicates that he understands them, his choosing to speak and not to request a lawyer is evidence that he knows his rights and chooses not to exercise them. *People v. Brooks, 51 Ill.2d 156; People v. Higgins.*

At the hearing on the motion, defendant stated that the officers told him the murdered man was the father of a policeman and unless he told them what they wanted they would turn him over to the deceased's son. The officers stated that they may have told the defendant that the deceased was the father of a policeman but denied the alleged threats and denied telling defendant that the son was in the police station. The trial court heard this evidence and found that the statement was voluntarily given and not coerced. We do not find this determination to be against the manifest weight of the evidence. *People v. Johnson, 44 Ill.2d 463.*

Defendant also attaches importance to the fact that the police officers took no notes of their conversation with

the defendant, thereby leading him to believe that his statements would not be used against him. We see no merit to this contention in light of the testimony and the finding by the court that the defendant had been fully warned as prescribed by *Miranda.*

Since the State used Wilson's statement as evidence against Wilson, who did not testify, defendant contends the court erred in not granting his motion for a severance.

In *Pointer v. Texas, 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065,* the Supreme Court held that the right of cross-examination is included in the sixth-amendment right of an accused to confront the witnesses against him. In *Douglas v. Alabama, 380 U.S. 415, 13 L.Ed.2d 934, 85 S.Ct. 1074,* and *Bruton v. United States, 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620,* the Supreme Court held that the use of a co-defendant's statement implicating the accused in the crime where there was no opportunity to cross-examine the declarant denied the accused his right of confrontation.

We agree that a severance should have been granted. By the use of the statement the nonavailability of Wilson for cross-examination denied defendant his constitutional right to confront the witness against him. However, the Supreme Court has recently considered a case similar in important respects. In *Schneble v. Florida (1972), 405 U.S. 427, 31 L.Ed.2d 340, 92 S.Ct. 1056,* defendant and a co-defendant were tried jointly for murder. Neither took the stand at the trial but police officers testified as to statements made by each implicating both in the crime. Defendant's statement admitted that he had strangled the deceased and gave the details of the crime. He stated that when the victim still showed signs of life co-defendant shot her. Defendant's statement was consistent with and not contradicted by other evidence in the case. Co-defendant's statement was not as comprehensive as defendant's and at most tended to corroborate certain details thereof. The Court held that the mere finding of a violation of the

*Bruton* rule does not automatically require the reversal of a conviction. The Court felt that it must determine on the basis of its own reading of the whole record and on what seems to have been the probable impact on the minds of the jury whether the co-defendant's admissions were sufficiently prejudicial to require reversal. The Court concluded that the minds of the average jury "would not have found the State's case significantly less persuasive had the testimony as to [co-defendant's] admission been excluded." 405 U.S. 427, ———, 31 L.Ed.2d 340, 345, 92 S.Ct. 1056, 1060.

In our case defendant's confession stated that he and Wilson met at a pool hall. They decided to rob the shoe repair store because they knew the proprietor would be alone. Defendant had been in the store previously and was afraid he would be recognized so it was agreed Wilson would go in first. He stated that both were armed. Wilson went in first as planned and defendant followed. He stated that when Wilson announced the holdup the proprietor started throwing shoes and Wilson shot him. He further stated that as he was leaving the store he ran into a little girl.

Wilson's statement said that he had gone to the shoe store to have his shoe sewn, that the defendant accompanied him, and that as he walked in the proprietor started throwing shoes and he shot him. This statement does nothing more than place the defendant in the store. It does not involve him in the murder. It is the defendant's confession that he and Wilson had entered the store to rob the deceased and that they were both armed which involves defendant in this crime of murder. (Ill.Rev.Stat. 1967, ch. 38, par. 9—1(3).) The testimony of the three girls that they saw the defendant enter the store shortly before the shots were fired and that he bumped into one of them as he left corroborates the defendant's confession. In view of the confession and the identification by the three girls the jury "would not have found the State's case

significantly less persuasive had [Wilson's testimony] been excluded." (*Schneble v. Florida, 405 U.S. 427, ——, 31 L.Ed.2d 340, 345, 92 S.Ct. 1056, 1060.*) We find the admission of Wilson's statement was harmless error beyond a reasonable doubt.

During cross-examination of a police officer by the defendant, the court sustained an objection to a question concerning the deceased's family. At a conference in chambers defendant stated he wanted to show that the deceased's son was a police officer and that the defendant had been told by the officers during interrogation that if he did not give them the information they wanted, the son would blow his brains out. At the pretrial hearing on the motion to suppress the confession the officer had denied threatening the defendant in this manner. At the conference in chambers the prosecutor informed the court of the previous denial and that the only way to prove such an assertion would be for the defendant to testify. The defendant now contends that he was put to the choice of either foregoing his right to cross-examine this witness or waiving his fifth-amendment right not to testify, which he contends was held to be reversible error in *Simmons v. United States, 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967.* We do not agree that the sustaining of the objection to defendant's question constituted reversible error. This line of interrogation could be pursued for impeachment purposes or for the purpose of showing the facts and circumstances surrounding the giving of the confession. If the defendant was attempting to impeach this witness by showing a prior inconsistent statement he first had to lay the foundation by asking if the threats had been made and securing a denial from the witness. This denial must then be followed by proof that the witness made the threats.

This court has held that it is error for the prosecutor to ask a defense witness such questions for the purpose of laying the foundation for impeachment unless he is prepared to follow up a denial of the question with proof

of the inference contained in the question. (*People v. Wallenberg, 24 Ill.2d 350, 353; People v. Sanders, 357 Ill. 610, 622.*) The same standard must be applied to the defendant's cross-examination of prosecution witnesses. The asking of the leading question and the denial carry a harmful innuendo which is unsupported by any evidence.

When the defendant knew that the witness would deny making the statement and that he could not follow the denial with proof that the witness had made the threats, it cannot be said that the question was asked in good faith. Under such circumstances the objection was properly sustained.

We do not find that the defendant's rights have been violated by requiring him to waive his fifth-amendment right not to testify in order to exercise his right to cross-examination. The broad language in *Simmons* relied upon by the defendant was substantially narrowed in scope by the Supreme Court in its decision in *McGautha v. California, 402 U.S. 183, 28 L.Ed.2d 711, 91 S.Ct. 1454.*

As stated in *McGautha,* "The criminal process *** is replete with situations requiring 'the making of difficult judgments' as to which course to follow. [Citation.] Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." 402 U.S. at 213.

If the purpose of the prohibited interrogation is considered not to be that of impeachment but of showing the circumstances surrounding the giving of the confession, we likewise find the objection properly sustained. A defendant has the right to show the circumstances surrounding the giving of his confession as bearing on its weight or credibility. (Ill.Rev.Stat. 1967, ch. 38, par. 114—11(f).) He should be given broad latitude for this purpose on cross-examination. However, asking a leading question concerning the threats and having a denial from the witness does not constitute evidence that the threats

were made. Unless the question is followed by evidence of the threats, as in the case of impeachment, the interrogation merely creates an innuendo unsupported by evidence. This court has condemned this manner of interrogation by the prosecutor when the insinuations thereby made are not supported by the proof. (*People v. Nuccio, 43 Ill.2d 375, 393; People v. Black, 317 Ill. 603, 617.*) Again, we must apply the same standard to the defendant's cross-examination of the prosecution's witnesses.

Whether the claimed purpose of the proposed interrogation was impeachment or showing the circumstances surrounding the giving of the confession, the questions which defendant sought to ask would not have furthered the purpose.

The witness had previously denied the making of the threats and the defendant was aware of this denial. The leading questions were to be asked for the purpose of creating in the minds of the jury an unjustified inference. The objection to this line of questioning was properly sustained.

Defendant was placed in a lineup after his arrest and was not afforded counsel. (See *United States v. Wade, 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926; Gilbert v. California, 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951.*) Recognizing that this court held in *People v. Palmer, 41 Ill.2d 571,* that the requirements of *Wade* and *Gilbert* do not apply to a pre-indictment lineup, defendant urges that *Palmer* be overruled and that the defendant's lineup identification be held invalid.

In *Kirby v. Illinois, 406 U.S. 682, 32 L.Ed.2d 411, 92 S.Ct. 1877,* the Supreme Court recently considered the question of pre-indictment identification in the absence of counsel. The Court held that the right to counsel does not attach until after the initiation of adversary judicial criminal proceedings against an accused, stating that "it is only then that the government has committed itself to prosecute and only then that the adverse positions of

Government and defendant have solidified." (406 U.S. 682, ———, 32 L.Ed.2d 411, 418, 92 S.Ct. 1877, 1882.) The Court enumerated "formal charge, preliminary hearing, indictment, information, or arraignment" (406 U.S. 682, ———, 32 L.Ed.2d 411, 417, 92 S.Ct. 1877, 1882) as ways of initiating adversary judicial criminal proceedings. This decision requires that the holding in *Palmer* be modified and broadened to apply the *Wade* and *Gilbert* rule to not only post-indictment lineups but to lineups conducted after the initiation of adversary judicial criminal proceedings against an accused by whatever means.

In the case before us the defendant had been arrested as a murder suspect sometime after 10 A.M. and following interrogation had been placed in a lineup between 2:00 and 2:30 P.M. the same day. He had not been formally charged with murder at that time. Under the decision in *Kirby,* his right to counsel as announced in *Wade* and *Gilbert* had not attached prior to the lineup.

Defendant next contends that the lineup was conducted in such an unnecessarily suggestive manner as to be conducive to mistaken identification denying him his constitutional right of due process of law. In *Stovall v. Denno, 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967,* the Court stated: " *** it remains open to all persons to *allege* and *prove* *** that the confrontation resulted in such unfairness that it infringed his right to due process of law." (Emphasis added.) 388 U.S. at 299.

Defendant in his motion to suppress the identification testimony alleged the denial of due process. However, we find that the proof presented does not support the allegation. The trial court conducted a hearing on the motion at which time the defendant, a police officer and the three girls who identified the defendant testified. Also the police officer and the girls were cross-examined thoroughly during the trial concerning the lineup identification. It appears that there were five men in the lineup—the defendant, Wilson, and three others. It appears

that their ages ranged from 17 to 20 years. All were Negro. The defendant stated that he and Wilson were lighter in color than the other three, however, Wilson was never identified by the girls. The police did not tell the girls that they had a suspect in the lineup nor whom they should identify. The three girls, as well as the mother of one of the girls, were in the room together at the lineup. There is no evidence that the girls conferred with the mother, other than that the daughter, when asked by her mother if she could indentify anyone, stated that she could. Each girl identified the defendant in the presence of the other witnesses. We find this procedure to be questionable. However, each girl was positive in her identification. One stated that she identified the defendant because she knew he was the one that she had seen and not because the others had identified him. They candidly admitted they could not identify Wilson, although one stated she had seen another man momentarily at the shoe shop as he peeked out of the door. The girls stated that their attention had been called to the defendant before he entered the store because they thought he was good-looking. They waited in front of the store for him to come out and when he did they recognized him again as the man who entered. They described him as wearing a gold shirt and dark trousers and as having curly hair.

Whether the defendant was denied due process of law depends upon the totality of the circumstances surrounding the identification procedure. If the witness had an opportunity to observe and there is little likelihood of mistaken identification a conviction based upon a subsequent in-court identification will not be set aside. (*People v. Fox, 48 Ill.2d 239.*) In reviewing this record we find that the girls not only had an adequate opportunity to observe the defendant but also their attention was called to him by virtue of their interest in good-looking boys. The identification by each witness in the presence of the others was suggestive. However, we are convinced there

was little likelihood that this procedure led to a mistaken identification.

Defendant next complains of the prosecutor's conduct in tendering to defense counsel certain statements and police reports in the presence of the jury, contending that the jury could have drawn the inference that their contents tended to corroborate the witness. These documents were tendered only after being requested by the defendant's counsel or by Wilson's counsel. No comment was made by the prosecutor when they were tendered or in the final argument that would lead the jury to infer that the contents thereof favored the prosecution. We cannot view the decorous manner in which these documents were tendered as constituting error.

Prior to trial, pursuant to motion by the defendant, the court ordered the production of certain documents and directed that all police reports pertinent to the case be made available at the time of trial. During cross-examination two of the girls stated that they had given the police a description of the defendant. Defense counsel did not ask for a copy of the police report containing these statements and the prosecution did not tender the same during the examination of the girls. After the girls had testied the next witness was a police officer who testified that he had made a police report containing these statements. A copy of the report was given to the defense counsel and used to cross-examine the officer. Defendant now insists that the prosecution should have tendered the police report to the defendant for use during the cross-examination of the two girls. Defendant has not shown that he was denied the use of these reports to cross-examine these witnesses. He never requested the report when the girls were testifying, nor did he request that they be recalled for cross-examination after the report had been furnished to him. Although the defendant now states that the record is bare as to what information this report contained, we note that defense counsel had access to and in fact used the same in

cross-examining the officer. Having had the opportunity to examine the report, the same "right sense of justice" which requires the production of such statements for cross-examination (*People v. Moses, 11 Ill.2d 84, at 89*) requires the defense counsel to disclose to the court how his client was prejudiced by the failure to have the same available for cross-examination of the two girls. We can only glean from the record that this report contained a description of the defendant given by the two girls consistent with their testimony and that it contains a statement by a boy named Williams who gave a description of Wilson contrary to his actual appearance. The conduct of the prosecution discloses no evasive action calculated to deprive the defendant of the use of the report as was condemned in *People v. Cagle, 41 Ill.2d 528, 533.*

Finally, defendant contends the sentence imposed was excessive. The hearing in aggravation and mitigation disclosed that the defendant had a previous conviction of theft and at the time of the murder he was under indictment for another crime of attempted armed robbery. The imposition of a sentence is a matter of judicial discretion and the sentence imposed by the trial court should not be altered by a reviewing court unless it is apparent that the judge abused his discretion. (*People v. Bonner, 37 Ill.2d 553.*) We have often stated that the trial court is normally in a better position during the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts on review. (*People v. Taylor, 33 Ill.2d 417, at 424; People v. Hampton, 44 Ill.2d 41, at 48.*) We cannot say that the sentence of the trial court was improper.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I respectfully dissent from the majority opinion and would reverse the judgment and remand the cause for a

new trial. The majority states, correctly, that the denial of defendant's motion for severance was error but holds it harmless for the reasons that defendant had confessed to the crime and the testimony of three witnesses proved his presence at the scene. With respect to the confession, the record shows that the trial court, in my opinion erroneously, foreclosed cross-examination which bore directly on the voluntariness of the confession and which affected its credibility, and which might have demonstrated prejudice on the part of the police officer who testified concerning defendant's oral admissions of guilt.

Officer Fitzgerald had testified on direct examination to an oral confession made by defendant in which he admitted that he and his co-defendant, Wilson, had gone to the deceased's store to rob him, that when Wilson announced that it was a "stickup" the deceased started to throw shoes and Wilson shot him. The record reflects that during the cross-examination of Fitzgerald the following ensued:

"Q. Now, do you know how many members of the family there are, of the deceased?

A. Do I know how many members—would you repeat that?

Q. Do you know who the members of the deceased's immediate family are?

A. Not all of them, sir, no.

Q. Well, do you know who his sons are and daughters were, if any?

MR. WOLFF: Object, I don't understand the relevancy.

THE COURT: Objection sustained. I don't see the relevancy.

MR. FOWLKES: Well—

MR. WOLFF: Object to any statements.

MR. FOWLKES: If your Honor will permit me I'll connect it up.

MR. SCHREIER: May we go in chambers?

THE COURT: We'll go in chambers. I don't see any relation at this time.

(The following proceedings were had outside the presence and hearing of the jury.)

MR. FOWLKES: The relation is, your Honor—

* * *

MR. FOWLKES: The question is this: One of the deceased's sons is a police officer—

MR. GERBER: So what? Why bring it up?

MR. FOWLKES: And my client tells me that Fitzgerald told him that if he didn't give them information that they wanted that this person was going to blow his brains out and they were going to take him to where he lives to blow his brains out.

MR. SCHREIBER: Well, this has already been denied on a pretrial motion, secondly, your Honor, the only way that this could be properly brought forward would be if the defendant took the stand and introduced his own testimony that that is the reason, that that is why he confessed.

THE COURT: That is the only way. I will still sustain the objection."

In approving the trial court's ruling the majority says: "Unless the question is followed by evidence of the threats, as in the case of impeachment, the interrogation merely creates an innuendo unsupported by evidence. This court has condemned this manner of interrogation by the prosecutor when the insinuations thereby made are not supported by the proof. (*People v. Nuccio, 43 Ill.2d 375, 393; People v. Black, 317 Ill. 603, 617.*) Again, we must apply the same standard to the defendant's cross-examination of the prosecution's witnesses.

Whether the claimed purpose of the proposed interrogation was impeachment or showing the circumstances surrounding the giving of the confession, the questions which defendant sought to ask would not have furthered the purpose.

The witness had previously denied the making of the threats and the defendant was aware of this denial. The leading questions were to be asked for the purpose of creating in the minds of the jury an unjustified inference. The objection to this line of questioning was properly sustained."

In my opinion, the trial court and the majority are in error and the ruling was erroneous for two reasons. First, the defendant had the right to ascertain whether the fact that the deceased was the father of a colleague might cause the witness to be prejudiced and was entitled to have the jury apprised of that fact so it could be considered in weighing the credibility of the officer's testimony. (*People v. Savage, 325 Ill. 313, 319.*) Secondly, the defendant was entitled to lay a foundation for impeachment of the officer's testimony. Neither the court nor counsel was possessed of the degree of prescience essential to know that the cross-examination would not elicit testimony upon which the witness could be impeached. The authorities cited by the majority are not in point since the factual situations were so different from that here presented and for the obvious reason that in none of the cases were the people required to waive one constitutional right to exercise another.

I cannot agree with the majority that *McGautha v. California, 402 U.S. 183, 28 L. Ed. 2d 711, 91 S. Ct. 1454,* is supportive of its position, and assuming, *arguendo,* that as stated in the majority opinion, the language of *Simmons v. United States, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967,* "was substantially narrowed in scope," a careful reading of the opinions shows no recession from the holding of *Simmons* that a defendant cannot be forced to sacrifice one constitutional right in order to exercise another, and I find no authority anywhere to support the proposition that a defendant in a criminal case must, during the presentation of the People's case, waive his fifth-amendment right not to testify in order to exercise his sixth-amendment right of confrontation of the witnesses.

With respect to the second ground for holding the *Bruton* error (*Bruton v. United States, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620*) to be harmless, the majority states that "In view of the confession and the identifica-

tion by the three girls the jury 'would not have found the State's case significantly less persuasive had [Wilson's testimony] been excluded.' " In so doing it notes that the procedure during the lineup in which the three girls identified defendant was "questionable" and that "The identification by each witness in the presence of the others was suggestive." The record shows that the lineup procedure, in fact, was so suggestive as to raise a serious question as to the reliability of the identifications based upon observation of the man who fled the scene of the crime. If the lineup and identification questions presented the only error in this case they could perhaps withstand the test of *People v. Fox, 48 Ill.2d 239,* but the combination of the improper limitation of cross-examination, the *Bruton* error and the lineup procedures prejudiced defendant to the extent that he did not receive a fair trial.

Finally, I disagree with the majority that a sentence is not to be modified on appeal unless the trial court, in imposing it, abused its discretion. Judicial discretion is abused " 'when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' [Citation.] " *Peek v. United States (9th cir.), 321 F.2d 934, 942.*) Neither the statutory provision which originally authorized reduction of sentences nor our Rule 615 (50 Ill.2d R. 615) requires that there be an abuse of discretion shown as a prerequisite to the exercise of the power, and a reviewing court should review the propriety of the sentence in the same manner as other errors.

MR. JUSTICE SCHAEFER joins in this dissent.