THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD COX *et al.*, Defendants-Appellants.

(No. 59269;

First District (1st Division)—July 15, 1974.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart and Ira Churgin, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr. and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURKE delivered the opinion of the court:

Larry G. Johnson and Gerald Cox (defendants) were found guilty after a bench trial of the armed robbery of Gus Siller and Grace Siller, in violation of section 18—2 of the Criminal Code, and were sentenced to terms of 4 years to 12 years. (Ill. Rev. Stat. 1971, ch. 38, par. 18—2.) On appeal they contend that the trial court admitted into evidence identifications of the defendants which were tainted by improper pretrial confrontations and which had no basis independent of those improper confrontations; that they were not proved guilty beyond a reasonable doubt; and that the sentences imposed were excessive.

At a hearing on defendants' pretrial motions to quash the arrest, to suppress evidence and to suppress identifications by the complaining witnesses, evidence was adduced that the complaining witnesses, brother and sister, were waiting for a bus at the Chicago Transit Authority elevated train terminal in the 2100 block of South Pulaski Road in Chicago about 9:20 P.M. on April 17, 1972, when they were robbed at gunpoint by two men identified as the defendants. The robbery was reported to the police and a description of the suspects was broadcast over the police vehicle radio, after which the complaining witnesses were transported to 14th Street and Pulaski Road and then to the 10th District Police Station. At the police station, complaining witness Grace Siller was told by the police that they were holding two suspects in a room and that she should walk by the room to see if she could identify them

as the robbers. Miss Siller, alone, observed defendant Johnson in the room, whom she recognized from his face and from his clothing, but did not see another man in the room at that time; she thereafter refused to sign a complaint in the matter for fear of the reaction of her parents, whereupon the police in attendance became angry, stating that the defendants probably had a record, that a case could be made against them and that if charges were not made in this matter, the defendants would simply go out and rob again. Miss Siller described the wearing apparel of the two assailants in detail, stated that she had gotten a "good look" at them for a period of 5 minutes in the lighted CTA station and stated that she had no difficulty recognizing Johnson in the police station as one of those assailants; she did not see a second man in the room at the police station, she "was too scared"; she had testified at the grand jury hearing that she identified two men in the room at the police station.

It was also developed at the hearing on the motions that the defendants were arrested between 9:20 and 9:30 P.M. at 14th Street and Pulaski Road by a police officer who had, 2 to 3 minutes prior to the arrest, received a "flash message" over his car radio that a robbery had been committed at the CTA station immediately before that time; the defendants matched the description of the men wanted for the robbery and were observed walking northerly along Pulaski Road prior to the arrest. A search of the defendants upon arrest, for the officer's own protection, disclosed an airgun. The trial court thereupon denied defendants' motions to quash the arrest and to suppress the gun as evidence, but withheld a ruling on the motion to suppress the identifications pending a hearing of the case on its merits to determine whether the complaining witnesses had an independent basis for their identifications of the defendants.

At the trial of the case, the State's evidence disclosed that the defendants entered the CTA station, stood behind the complaining witnesses, and with a gun drawn by defendant Cox, announced a hold-up. No other persons were in the station at the time. The complaining witnesses were ordered to stand facing windows overlooking the outside of the station and the defendant Johnson took money from Gus Siller; the evidence conflicts as to whether Johnson took the money from Siller's pocket or whether Siller gave it to Johnson. An unidentified person entered the station, acknowledgments were exchanged between that person and the defendants after Cox had lowered the gun to his side and that person continued up the stairs to the elevated train platform. The complaining witnesses were then ordered behind the CTA clerk's booth, where defendant Johnson took Grace Siller's wallet and removed money therefrom. After the robbery, the defendants ordered the com-

plaining witnesses up the stairs to the elevated train platform; the latter ascended several stairs; they observed a bus approaching on the street, and they left the station and boarded the bus; they did not see the defendants after they were ordered to ascend the station stairway. The complaining witnesses rode the bus to about 26th Street and Pulaski Road, where they hailed a police car and reported the incident. The officers radioed a report and shortly thereafter they were informed that suspects had been apprehended at 14th Street and Pulaski Road. After the complaining witnesses were transported to the police station, Miss Siller alone viewed defendant Johnson seated in a room; she later identified both defendants at a preliminary hearing, as did her brother, at which hearing the defendants' names were called and they stepped forward and stood while being identified. It was further brought out by the State's evidence that the CTA station was lighted well enough for the complaining witnesses to observe their assailants; that both witnesses observed the faces and the clothing of the assailants by turning and looking at them on several occasions during the robbery, albeit the witnesses had been ordered by the defendants to turn away; that the gun introduced into evidence was the same gun used in the robbery and was the same gun seized from defendant Johnson by the arresting officer; and that the complaining witnesses had no doubt that the defendants were the men who robbed them on April 17, 1972. At the time of the arrest, the defendants told the arresting officer that they knew nothing of the robbery in question and that they were proceeding to get a drink at a tavern at the corner of 14th Street and Pulaski Road; and the defendants were walking in a normal manner when arrested and were not breathing heavily.

It was brought out for the defense that defendant Johnson had been at his home in Argo, Illinois, on the evening in question; that he boarded an eastbound 63d Street bus near 7500 West, shortly after 9 P.M. to go into Chicago; that he transferred buses at Pulaski Road and boarded a northbound Pulaski bus which he rode until he reached 15th Street; and that he alighted from that bus and walked to Karlov Avenue where he met defendant Cox. Defendant Cox, in the meanwhile, had been in the company of a friend throughout that afternoon and evening, and sometime during that evening (he was uncertain of the exact time), he met Johnson at 15th and Karlov. As Johnson and Cox were proceeding to 14th and Pulaski for a drink, they were arrested and searched. A pellet gun belonging to Johnson's brother was confiscated from Johnson's belt; Johnson had earlier fixed that gun and was returning it to his brother that evening. Both men admitted that they were dressed in clothing when arrested which had earlier been described by the complaining wit-

nesses to the police as similar to that worn by the robbers. The defendants testified that they did not commit the robbery in question.

During the course of the State's case, the court interposed that it was denying the defendants' pending motion to suppress the identification testimony of the complaining witnesses, on the ground that the identification had a basis independent of any tainted, pretrial confrontation between the complaining witnesses and the defendants. At the conclusion of the evidence, the trial court commented that in spite of several minor inconsistencies in the testimony of the complaining witnesses, he was impressed with their testimony and with the speed with which they had reported the incident and with which the suspects were arrested. The defendants were found guilty as charged in the indictment, and in imposing sentence the trial court noted that it was bound to impose a minimum term of 4 years as prescribed by statute and that he would follow the American Bar Association's standard and impose three times the minimum, or 12 years as a maximum term.

The initial contentions raised by defendants relate to the propriety of the trial court's admission of the in-court identification testimony as evidence. They argue that that testimony was tainted by the pretrial confrontation at the police station between Miss Siller and defendant Johnson and by the pretrial confrontation at the preliminary hearing where both defendants were identified by both complaining witnesses after the former were called and stood alone during that hearing; they further argue that the in-court identification testimony was not supported by a basis independent from those tainted pretrial confrontations.

■■ Defendants argue at length and cite a number of cases for the proposition that an identification which is the product of an improper confrontation cannot be admitted into evidence. (See *e.g., Stovall v. Denno*, 388 U.S. 293; *People v. Nelson*, 40 Ill.2d 146, 238 N.E.2d 378; *People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152.) That principle is well established, but has no application where, as here, the in-court identification has a basis independent and apart from the allegedly tainted pretrial confrontations and was not affected by those latter confrontations. *People v. Fox*, 48 Ill.2d 239, 269 N.E.2d 720.

■■ The evidence adduced below reveals that the Sillers had 5 minutes to observe their assailants in an adequately lighted area. Although they were told to face away from the robbers, the Sillers continued to turn and observe them; the description given to the police conformed in almost every detail with the physical characteristics and wearing apparel of the defendants when arrested. That description, buttressed by the complaining witnesses' testimony that the defendants were in fact the men who robbed them, was positive, consistent and unshaken on cross-

examination. Apart from the question of whether the pretrial confrontations were proper, it is evident that the State adduced sufficient, and clear and convincing evidence that the Sillers' in-court identification of the defendants as the robbers was based upon the confrontation which had occurred during the robbery itself. The trial court was not in error in admitting that testimony into evidence.

Defendants further contend that the State's evidence failed to prove their guilt beyond a reasonable doubt, in that the complaining witnesses had only "limited opportunity" to observe their assailants during the robbery.

As the foregoing summary of the evidence demonstrates, sufficient evidence was adduced by the State upon which to have based the convictions for armed robbery. The question of whether the Sillers had ample opportunity to observe their assailants during the holdup was a matter for the trier of fact, as were the questions raised by defendants which relate to the alleged inconsistencies in the testimony of the complaining witnesses. It is to be noted that the trial court expressly commented that he was impressed with their testimony, although there existed some minor inconsistencies. Upon consideration of the overall circumstances presented by the State, the immediate complaint and description of the assailants (which almost exactly matched that of the defendants, who were stopped a short distance away from the scene of the robbery), and the identification of the defendants as the assailants and of the gun as that employed in the robbery, the evidence was sufficient to sustain the convictions. (*People v. Hampton,* 44 Ill.2d 41, 253 N.E.2d 385.) The fact that the defendants raised the defense of alibi does not entitled them to acquittal *ipso facto,* but raised a question of credibility for resolution by the trier of fact. *People v. Mack,* 25 Ill.2d 416, 185 N.E.2d 154.

The final point urged by defendants is that the maximum sentence imposed upon them is excessive. They argue that the trial court erred in construing the sentencing statute as requiring the imposition of a maximum term of years which was three times the minimum term imposed and that the court failed to take into account that neither defendant had a criminal record.

The statute under which defendants were charged provided that the minimum term for armed robbery be set at no less than 5 years. (Ill. Rev. Stat. 1971, ch. 38, par. 18—2.) Defendants were properly sentenced under the Unified Code of Corrections to a minimum term of 4 years. (Ill. Rev. Stat. 1973, ch. 38, pars. 18—2, 1005—8—1; *People v. Chupich,* 53 Ill.2d 572, 295 N.E.2d 1.) However, upon consideration of the reasoning of the trial court in the imposition of the maximum term of 12 years, it is

apparent that the court did not, as contended by defendants, conclude that the one-to-three ratio required in lesser offenses by the Code was also required in the instant situation. Rather, the trial court expressly stated that it was the court's custom to follow the standard for sentencing set by the American Bar Association, that the maximum term be three times the minimum term imposed.

■■ Further, the maximum term of 12 years imposed is not, of itself, excessive. Two offenses were here committed at gunpoint. Although there is evidence that the weapon used was a "BB" gun, there is also evidence that it was a "CO-2" gun which could have caused serious injury to the victims. The term of 12 years permits adequate leeway for the Parole and Pardon Board to determine whether, upon completion of their respective minimum terms, the defendants are sufficiently rehabilitated to re-enter society. No error was committed in the imposition of the sentences.

For the foregoing reasons, the judgments are affirmed.

Judgments affirmed.

GOLDBERG and HALLETT, JJ., concur.