THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAN B. LOSTUTTER, Defendant-Appellant.
Third District   No. 78-241

Opinion filed August 23, 1979.—Rehearing denied September 21, 1979.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael Mihm, State's Attorney, of Peoria (Marc D. Towler and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:
This is an appeal from an order of the Circuit Court of Peoria County denying a motion by the defendant, Dan B. Lostutter, to withdraw his plea of guilty to a charge of attempt deviate sexual assault. The defendant raises two issues for our consideration: First, was it reversible error for a

public defender to represent the defendant at the hearing on the motion to vacate the guilty plea when a ground of error advanced by that defender was ineffective representation by a fellow public defender at the time of the plea; and second, was the sentence given to the defendant (five to 15 years) for conviction of attempt deviate sexual assault excessive.

The record discloses that on July 5, 1976, defendant Lostutter lured a seven-year-old boy into the bathroom of an apartment and, after removing all of the boy's clothing, attempted to engage in an act of anal intercourse. At the time of his discovery, the defendant was standing over his victim. As a result of this incident, the defendant was charged by indictment with the offense of deviate sexual assault (Ill. Rev. Stat. 1975, ch. 38, par. 11—3(a)). After entering a plea of not guilty to the charge, the defendant's public defender, Mark Rose, engaged in plea negotiations with the State's attorney. As a result of these negotiations, the State agreed to file an information charging defendant with attempt deviate sexual assault (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4(a), 11—3(a)), and to dismiss the indictment in exchange for defendant's plea of guilty to the lesser charge.

On January 20, 1977, the defendant, pursuant to plea negotiations, entered his guilty plea to the charge of attempt deviate sexual assault. Prior to entering his plea, he was instructed by the trial court on the nature of the offense, and informed of the possible sentences he could receive. In response to the court's inquiry with regard to whether he was satisfied with the plea negotiations into which his attorney, Rose, had entered on his behalf, Lostutter said that he was not, but was "going along" because Rose had told him he would probably be convicted by a jury, and he was "in a tough spot right now because of my own statement I gave to the police." The statement to which Lostutter was referring was a statement given to a Peoria police officer shortly after the crime to the effect that he did not know whether he had attempted to engage in anal intercourse with the victim. The court then asked the defendant if he wished to enter a guilty plea or have a trial, to which the defendant responded that he wished to proceed with the plea. Lostutter also stated at this time that he was satisfied with the services of Rose. Subsequently, the court accepted the guilty plea and dismissed the indictment. At the sentencing hearing, the defendant was sentenced to the penitentiary to serve not less than five nor more than 15 years.

After the defendant was sentenced, Rose filed a motion to withdraw Lostutter's guilty plea, alleging that the trial court had failed to properly admonish defendant pursuant to Supreme Court Rules 402 and 605 (Ill. Rev. Stat. 1975, ch. 110A, pars. 402 and 605) and had given the defendant an excessive sentence. Prior to the hearing on the motion, Rose withdrew from the case, and was replaced by another public defender, Howard

Thomas. At the hearing, Thomas argued that the guilty plea was involuntary (although prior to entering a guilty plea Lostutter was asked by the court if any force, threats, or coercion had been applied to make him plead guilty, to which he replied that none had), and had not been "intelligently and understandingly made" because Rose did not file a motion to suppress Lostutter's statement, and did not advise him "that he didn't have to plead guilty because he made a statement." The motion to withdraw the plea was denied, and appeal taken.

The defendant's position on appeal is that Thomas' argument in support of the motion to withdraw the guilty plea constituted an attack on the effectiveness of the representation afforded by another public defender (Rose) in a prior proceeding, and created a conflict of interest which demands reversal of the order denying the motion to withdraw, and remandment so that defendant may be represented on the motion by private counsel. The defendant refers us to many cases in which representation by a public defender in a post-conviction hearing or in hearing on a post-trial motion created a conflict when at that hearing the defender would be put in the position of challenging the effectiveness of the representation provided by another public defender in an earlier proceeding (See, *e.g., People v. Terry* (1970), 46 Ill. 2d 75, 262 N.E.2d 923; *People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169; *People v. Freeman* (1977), 55 Ill. App. 3d 1000, 371 N.E.2d 863; and *People v. Norris* (1977), 46 Ill. App. 3d 536, 361 N.E.2d 105). However, these cases involve situations in which an allegation of ineffectiveness was either advanced in the post-conviction petition or post-trial motion, or expressly raised at the post-trial hearing. In the case at bar, the motion to withdraw the guilty plea did not allege ineffectiveness of counsel as a basis for reversal, and our reading of the record reveals an absence of any allegation by Thomas that Rose's representation was ineffective or incompetent. The main thrust of Thomas' argument at the hearing was that the defendant did not voluntarily and intelligently plead guilty, not that Rose's representation was ineffective. The pertinent portion of Thomas' argument on the motion is worth reciting:

"At page seven of the transcript, the Defendant, Mr. Lostutter, stated I have been informed that I probably couldn't beat this in a jury trial and made a couple of other comments and he said, I am in a tough spot right now because of my own statement I gave to the police. I don't know whether I did it or not. Well, I think, perhaps there may have been a problem there. Well, it looks to me, Your Honor, that he is pleading guilty because of the statement that he allegedly made but maybe he didn't know that he had a right to have a motion to suppress the statement made. It seems to me he is thinking I have got to plead guilty because I made a statement.

Now, no motion to suppress that was ever filed, and it would seem to me that maybe we were in a problem there of counsel at the trial not advising him that he didn't have to plead guilty just because he made a statement but it appears to me that he is pleading guilty just because he made a statement and then he said I did whether I did it or not, so, *that would be an argument that I would present to the Court as to whether or not he intelligently made the plea.* I think, he made the plea because he felt that he had to because he made a statement." (Emphasis added.)

■■ As this portion of Thomas' argument reveals, Thomas did not allege, nor consciously intimate, that either Rose's failure to file a motion to suppress or his possible failure to inform his client that an effort to suppress the statement could be made constituted ineffective assistance of counsel. Rather, Thomas argued that Lostutter's admission that his statement to the police placed him "in a tough spot" indicated that he may have been unaware the making of the statement did not compel him to plead guilty, and thus he had not intelligently made the plea. It is true that if in fact Lostutter pleaded guilty while under the misapprehension his statement left no other recourse, this misapprehension was the direct result of Rose's failure to advise him that the statement was not fatal to his case. However, Thomas did not contend that such a failure was tantamount to ineffectiveness of counsel. Although defendant takes the position that Thomas' statement that "maybe we were in a problem there of counsel at trial not advising him that he didn't have to plead guilty because he made a statement," constituted a questioning of Rose's performance, such an interpretation is not consistent with the tenor and direction of his argument on the motion. We are of the opinion that Thomas' argument, focused on the issue of whether Lostutter's guilty plea was voluntarily and intelligently made and not on the issue of ineffective counsel, did not involve a conflict of interest, and as a consequence remandment for representation at the hearing by private counsel is not required.

■■ The defendant's second contention on appeal is that his five- to 15-year sentence for attempt deviate sexual assault is excessive. It is well settled that the imposition of a sentence is a matter of judicial discretion, and a reviewing court will not alter a sentence absent a showing of abuse of that discretion (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161). Some of the factors which must be considered by the court before determining the proper sentence to be imposed include defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590), and

naturally, the trial court is in a better position to consider these factors than the reviewing court. In the instant case, the record reveals that the defendant was a 19-year-old who, according to the presentence report, had been convicted previously of battery, criminal trespass to a motor vehicle, and misdemeanor theft. He was a habitual user of drugs, and his participation in drug rehabilitation programs was considerably less than successful. His work history was poor, and he was categorized as antisocial by one of the psychiatrists who examined him.

■■ ■ In light of these factors and the deference to be given the trial court's judgment in sentencing, we find no abuse of discretion. The defendant points to the trial judge's statement that "I do want it understood how I have to view this particular problem" as being indicative of an abuse of discretion in that it reveals the court has singled out the defendant for harsh treatment. (*People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 169.) However, in *Bolyard*, the statement of the trial judge was to the effect that the perpetrators of sex crimes would never receive probation in his court. The supreme court held that the arbitrary denial of a request for probation was an abuse of discretion. Such was not the case here. The trial court's statement in the case at bar in our judgment merely reflects appreciation of the heinousness of the crime, *i.e.*, attempted anal intercourse with a seven-year-old boy.

For the foregoing reasons, the judgment of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

STOUDER, P. J., and SCOTT, J., concur.