THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HOSEA BARGE, Defendant-Appellant.

(No. 71-216;

Fifth District—October 12, 1972.

Matthew J. Moran, of Defender Project, of Chicago, for appellant.

Robert H. Rice, State's Attorney, of Belleville, (James W. Jerz and Edward N. Morris, both of State's Attorneys Assn., of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

The defendant, Hosea Barge, was indicted for the offense of burglary in that he, without authority, knowingly entered into the building of Joseph E. Elmer located at 661 North 56th Street, East St. Louis, Illinois, with intent to commit therein a theft. Following a jury trial in the circuit court of St. Clair County he was found Guilty and sentenced to a term of eight to twenty years in the Illinois State Penitentiary.

The issues presented for review are: (1) whether identification evidence was improperly admitted due to a grossly suggestive police lineup and denial of assistance of counsel at the lineup; (2) whether the essential elements of burglary were proven beyond a reasonable doubt; (3) whether the defendant was prejudiced by the State's Attorney's closing argument; (4) whether the sentence imposed was excessive.

At approximately 3:30 in the afternoon of August 4, 1970, a Mrs. Payne, a neighbor of Joseph Elmer, was sitting in her backyard with Irene Schnur. They saw a man come down the alley that separated the Payne Home from the Elmer home, go through the garage, ascend the stairs leading to the back porch and enter the Elmer home. Mrs. Payne called a Mrs. Arras, a next door neighbor of Mr. Elmer, and asked her to call the police, which was done. Mrs. Arras went into her backyard and had an unobstructed view into the kitchen of the Elmer house where she observed the defendant for a short period of time and then saw him go into another room. After a few minutes the individual came down the stairs and was confronted by Mmes. Payne, Schnur and Arras. Their testimony was that the day was clear and bright, that they stood within ten to fifteen feet of the defendant and conversed with him for five to ten minutes. In explanation of his entry of the Elmer house defendant said, "I wasn't hurting anyone, I was looking for a friend." When defendant was told the police had been called he fled on foot. All three of the women made a positive identification of defendant at a police lineup and at the trial.

Defendant first contends that he was improperly denied counsel at the lineup and that it was conducted in a grossly improper and suggestive manner so as to be conducive to irreparable mistaken identification. The

lineup was held at the East St. Louis police station approximately two hours after the occurrence. It was a three man lineup with the defendant, a 43 year old police station janitor dressed in coveralls and a stocky 220 to 230 pound police detective dressed in a business suit. The pre-lineup description of the offender given by the three women was that he was a young Negro of lean build with bushy hair and wearing a green T-shirt and brown bell-bottom pants. Defendant first appeared in the lineup shirtless but with brown bell-bottom pants. He resisted directions to don the green T-shirt but after some scuffling he did so in view of the three women. Defendant stepped out of the lineup before being excused.

■■ In *People v. Brown*, 6 Ill.App.3d 500, 285 N.E.2d 515, we recently had occasion to consider the right of an accused to counsel at a pre-indictment lineup. Our holding there, based upon the recent Supreme Court case of *Kirby v. Illinois*, 92 S.Ct. 1877, resolves defendant's contention against him and there is nothing peculiar about the factual situation of this case to justify further discussion of the point.

■■ As an ancillary to his contention regarding his right to counsel at the pre-trial lineup, defendant argues that the lineup was conducted in such a grossly suggestive manner as to be conducive to a mistaken identification. In *People v. Fox*, 48 Ill.2d 239, 269 N.E.2d 720, the Supreme Court pointed out that the evidentiary question involved in identification testimony is two-fold: (1) in-court identification of the defendant and (2) testimony given in court concerning extra judicial identification of the defendant by the witnesses. In the first situation, if the identification is based on a source independent of and untainted by the identification at a pre-trial confrontation, the same is admissible even if the pre-trial confrontation was conducted in violation of defendant's right to counsel under the sixth amendment. (*People v. Fox, supra; United States v. Wade* (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, 1158-1162; *Gilbert v. California* (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, 1186.) Also, if the confrontation is conducted in a suggestive manner conductive to mistaken identification, the question of whether the defendant was denied due process of law in violation of his rights under the fourteenth amendment depends on the totality of the circumstances. If the witness had an adequate opportunity to observe, and there is little likelihood that the procedures used led to a mistaken identification, the conviction based on a subsequent in-court identification will not be set aside. *Simmons v. United States*, 390 U.S. 377, 19 L.E.2d 1247, 88 S.Ct. 967.

■■ In this case, since defendant was observed to unlawfully enter the Elmer house in broad daylight by three witnesses and was confronted and engaged in conversation by those same three witnesses for five to

ten minutes when he left the house, it is more than abundantly clear that there was an independent basis for the in-court identification of defendant totally irrespective of and independent of any procedures followed at the lineup. Accordingly any error that may have ensued during the course of the lineup must be deemed harmless.

■■■ With defendant's second contention we cannot agree. It is that the evidence was insufficient to establish the intent essential to the burglary charge. The three women observers testified that defendant brought nothing from the house as he exited, and Mr. Elmer, the owner, testified that nothing was missing. But Mr. Elmer did state that a nightstand door was found open when he entered the house after the incident to check its contents. The crime of burglary is complete upon the entering with intent to steal, and it is not essential to allege or prove that anything was taken. (*People v. Figgers* (1962), 23 Ill.2d 516, 179 N.E.2d 626.) Intent may be inferred from the proved facts and circumstances (*People v. Niksic* (1944), 385 Ill. 479, 53 N.E.2d 400), but, it is essential to a conviction upon circumstantial evidence that the facts proved be not only consistent with the defendant's guilt, but that they be inconsistent, upon any reasonable hypothesis, with his innocence. (*People v. Wilson* (1948), 400 Ill. 461, 81 N.E.2d 211.) The facts here, we feel, support the inference of the intent to commit a theft upon entry. The Elmer home was unoccupied at the time of the entry, the defendant did not live in the area, the defendant's explanation to the three witnesses that he was "looking for a friend" was not credible, defendant took flight when he was told by the witnesses that the police had been called, and the door of the nightstand was found open. These factors are sufficient to support the finding of the jury, implicit in their verdict, that defendant possessed the intent to commit a theft when he entered the Elmer house.

■■ Defendant next contends that reversible error was committed when the prosecutor stated in his closing argument:

"Ladies and gentlemen, you may wonder because of the defendant having a jury trial, of going through that, the mere fact that he exercise that right to a jury trial, that there is something to be said in his defense here, in this case  *  *  *"

Defendant's objection was sustained by the court's remark that the prosecutor was to "confine your remarks to the testimony." We agree with defendant that the remarks were improper but we do not believe them to be prejudicial or to require reversal since it does not appear they deprived defendant of a fair trial. On the basis of the record before us it cannot be suggested that the improper argument influenced the verdict of the jury.

Defendant finally asserts that a sentence of eight to twenty years im-

prisonment is excessive and disproportionate to the circumstances and seriousness of the offense. He calls attention to the fact that no property was taken and nothing was destroyed during the incident.

The record discloses the defendant to be 31 years of age. He has received two prior sentences to the penitentiary for burglary. He was released from the Illinois Penitentiary on December 1, 1969, after having served a sentence upon which he received a parole and was later returned for a parole violation and served the maximum term of his sentence of five years.

The purpose sought to be achieved by imposition of a sentence are adequate punishment for the offense committed, the safeguarding of society from further offenses and the rehabilitation of the offender into a useful member of society. Considering the age and prior record of defendant it does not appear that he is a good prospect for early rehabilitation. Shorter sentences imposed upon the previous convictions have not resulted in the rehabilitation of defendant. We think that the trial court has not abused its discretion in imposing the sentence in question since this is the third offense of burglary for which defendant has been convicted. The sentence is not at odds with the aims and purposes of the sentencing process. The prior record justifies the court in giving more emphasis to the safeguarding of society from further offenses.

Judgment affirmed.

EBERSPACHER, P. J., and CREBS, J., concur.